UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| SUSAN P. MAHARA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:15CV328-PPS |
| | ) | |
| NANCY BERRYHILL, Acting Commissioner | ) | |
| of the Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

At age 50, Susan P. Mahara filed an application for disability insurance benefits with the Social Security Administration alleging disability beginning June 28, 2013. Mahara was previously granted disability benefits based on migraine headaches for the period of December 5, 2008 through August 31, 2010, before returning to work as a school nurse on September 1, 2010. [DE 8 at 101-110.][2] In this case, Mahara appeals the final decision of the Commissioner of Social Security denying her second application. [DE 1.] That decision is embodied in the written opinion of an Administrative Law Judge issued after an evidentiary hearing. Judicial review of the Commissioner's

---

[1] On January 23, 2017, Nancy Berryhill became the Acting Commissioner of Social Security. Fed.R.Civ.P. 25(d) provides for Berryhill's automatic substitution in place of her predecessor, Carolyn Colvin.

[2] The administrative record is found in the court record at docket entry 8, and consists of 1172 pages. I will cite to its pages according to the court's Electronic Case Filing page number, rather than by the Social Security Administration's Bates stamp numbers, which don't begin until page 8 of 1172 as the pages are enumerated in ECF.

decision is limited. If an ALJ's findings of fact are supported by "substantial evidence," then they must be sustained. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In making a substantial evidence determination, I must review the record as a whole, but I can't re-weigh the evidence or substitute my judgment for that of the ALJ. *Overman*, 546 F.3d at 462.

The ALJ found that Mahara had four severe impairments: migraine headaches/ occipital neuralgia; cervical degenerative disc disease; depression; and posttraumatic stress disorder. [DE 8 at 29.] But the ALJ determined that Mahara's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.* at 31.] Ultimately, the ALJ concluded that, despite her impairments, Mahara retained the residual functional capacity to perform light work with certain limitations. [*Id.* at 33.] Based on the vocational expert's testimony, the ALJ concluded that Mahara is capable of performing jobs that exist in significant numbers in the national economy. [*Id.* at 43.]

Mahara's sole challenge on appeal is how the ALJ evaluated the opinion of Mahara's treating physician, pain specialist Dr. Hary Ailinani. [DE 17 at 10.] Mahara has suffered from chronic headache issues for her entire life. [DE 8 at 690, 721, 732, 734,

738, 741, 744, 751, 753, 756, 766, 891, 900, 906, 912, 914, 916, 919, 924, 937, 938, 948, 988, 1025, 1091, 1123.] Mahara first saw Dr. Ailinani at Summit Pain Management on December 14, 2013, for help with her migraine headaches. [*Id*. at 603.] Dr. Ailinani set upon an aggressive course of treatment for Mahara, much of it ultimately unsuccessful. Besides prescribing several new medicines (Sumavil, Zongrin and a topical pain cream), Dr. Ailinani initiated steroid injections into the cervical facet joints, which took place on December 19 and December 30. [*Id.* at 606, 601, 602.] Mahara had follow-up visits with Dr. Ailinani on January 8, February 6 and 17, 2014, for two injections of Decadron and Marcaine, and another cervical facet steroid injection. [*Id*. at 595, 590, 588.]

Mahara had appointments with Dr. Ailinani on March 4, and on March 13 underwent a right radiofrequency ablation of the cervical medial branch nerve. [*Id*. at 640, 639.] After a visit to Dr. Ailinani on March 25, the next day Mahara had a trial of a spinal cord stimulator. [*Id*. at 633, 624, 673.] On March 31, Mahara reported a 70-80% pain relief from the spinal cord stimulator trial, and she was therefore referred by Dr. Ailinani to another doctor for permanent placement of a spinal cord simulator. [*Id*. at 630.] Dr. Walter P. Jacobsen of the NeuroSpine & Pain Center implanted the permanent spinal cord stimulator on April 24, 2014. [*Id.* at 659, 651.]

The permanent spinal cord stimulator was less the successful. Mahara saw Dr. Ailinani, on June 5, July 1, September 3, and October 28, 2014 and she continued to report migraines with ineffective pain relief from various medications, and she therefore

3

received additional injections. [*Id.* at 1053, 1048, 1042, 1036.] The migraines got so bad that on October 31 and November 13, 2014, Mahara went to the emergency room at Fort Wayne's Lutheran Hospital for severe headache pain, and was treated with IV medications. [*Id.* at 1084, 1074.] The ALJ's hearing took place on November 18, 2014.

In considering Mahara's challenge to the ALJ's assessment of Dr. Ailinani's opinions, I am guided by these principles. Under what is called the "Treating Physician Rule," a treating doctor's "opinion 'regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record.'" *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016), quoting *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). It is sensible to accord more weight to a treating physician's opinion "because they are most familiar with the claimant's conditions and circumstances." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016).

It is for this reason that when an ALJ does not give controlling weight to the opinion of a treating physician, he "must offer 'good reasons' for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010), citing 20 C.F.R. §404.1527(d)(2). And failure to do so is cause for remand. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). In determining the weight to be given to Dr. Ailinani's opinions, the ALJ was required to consider " the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency

4

and support for the physician's opinion." *Larson*, 615 F.3d at 751. *See also Brown*, 845 F.3d at 252.

Dr. Ailinani's Medical Source Statement dated December 2, 2014 lists Mahara's diagnoses as "chronic headaches, migraines, cervical facet arthropathy, myofascial syndrome, occipital neuralgia, [and] chronic pain syndrome." [DE 8 at 1094.] As recounted above, this statement wasn't made in a vacuum. It was completed after an extensive treatment history between Dr. Ailinani and Mahara. Dr. Ailinani indicates that when Mahara has a headache, she would generally be unable to perform even basic work activities. [*Id.* at 1097.] Dr. Ailinani explains that her headaches and chronic pain would cause workplace absenteeism due to Mahara's inability to focus, nausea, vomiting, dizziness, photophobia, phonophobia and reduced concentration. [*Id.* at 1099.] Dr. Ailinani expresses the opinion that Mahara could remain on task despite any symptoms less than 70% of an eight-hour work day. [*Id.* at 1100.]

Although the ALJ acknowledges that these "limitations, absences, and off task behaviors would preclude even unskilled work," she nonetheless concluded that "the responses cannot be accorded any great weight as an accurate reflection of functioning throughout the period at issue." [*Id.* at 39.] The ALJ points to a couple things to conclude that the record "as a whole is insufficient to support" Dr. Ailinani's opinion. [*Id.*] These are Mahara's work "managing" her husband's bar and her "frequent travels and other family and home activities." [*Id.*] In addition, the ALJ discredits Ailinani's

5

opinion because of improvement in Mahara's symptoms with the spinal cord stimulator. [*Id.*] Finally, the ALJ indicates that Mahara "continued to report" that medications, Botox injections and other treatments were effective "for the most part." [*Id.* at 39.] On this basis, the ALJ gives Dr. Ailinani's opinion "only minimal weight." [*Id.*]

These reasons are thin. Let's begin with Mahara's work at the bar she owns with her husband and her occasional travels with him. For starters, the Seventh Circuit has "repeatedly cautioned against equating daily living activities with the ability to perform a full day of work, as the former are often subject to different restraints (e.g., longer periods within which to complete and more frequent opportunities to rest) and at times can be avoided only at great personal cost." *Brown*, 845 F.3d at 253. Considerations such as flexibility in scheduling, the availability of help from other persons (such as a spouse or other family members), and minimum standards of performance lower than an employer's as reasons that (as applied here) all might explain why Mahara's work in the family business, personal travel and family activities might not be inconsistent with a functional incapacity to work a full-time job. *Id*.

With her focus on Mahara's work in her husband's wine bar business, the ALJ discredits the hearing testimony of both Mahara and her husband about her limited involvement with their business — Rudy's Chocolate, Wine and Cigar Shop. The ALJ's view is based on references in the notes of Mahara's therapist, Jeanne Porter, whose Progress Notes spanning January 2009 to October 2014 are in the administrative record.

Consideration of the entirety of the record, however, doesn't support the ALJ's conclusion that Susan Mahara "manag[ed] the bar until June 2014." [DE 8 at 39.]

Mahara's husband Rudy's principal occupation is as a financial planner. [*Id*. at 62.] The wine bar business opened in August 2013. [*Id.* at 493.] At the ALJ's hearing in November 2014, Mahara testified that she had previously "filled in, yes, behind the bar, and I can still in an emergency," but that as of October 2013, "the headaches got severe enough that I asked him to take me off the regular rotation and I would fill in if somebody couldn't come to work." [*Id*. at 62.] Rudy Mahara testified similarly, noting that he and his wife have "very little hands-on involvement" in the operation of Rudy's. [*Id*. at 83.] Although the Maharas "dreamt about" Susan having a larger role in the business, her headaches kept preventing her from coming in. [*Id*. at 84.] As discussed below, the record repeatedly confirms Rudy's testimony that "we do have staff there and I have a meeting with my manager once a week and some planning, but I don't have anything to do with that on a daily basis." [*Id*. at 84.]

Contrary to the ALJ's interpretation, the fact that a psychologist noted that Susan "is relishing her role as a co-*owner* of the bar" does not indicate that Susan was working at the bar as its *manager*. [DE 8 at 37, 461 (emphasis added).] The same Chart Note of Dr. Lake reflects that the first manager of Rudy's was a man named "Gabe," who was a disappointment to the Maharas and was replaced as manager by their son-in-law Justin. [*Id.* at 460-61.] These circumstances are also reflected in Ms. Porter's Progress Notes

dated August 22, September 12, October 10, and November 21 [*Id*. at 493, 496, 498, 572.] Although the August 22 notes refer to the Maharas bringing Justin in "as an assistant manager to her," by October 10, Porter's notes reflect that Susan "is not working" and "is able to do and go more places with Rudy," and that things are going well "since they hired Justin." [*Id*. at 498.]

The ALJ's reference to June 2014 as the termination of Susan's management of the bar is based on the Progress Note for June 12, 2014 in which Jeanne Porter recorded that Mahara talked about "her role as the manager which she feels is not a good match for her regarding her skills, strengths and interest." [*Id*. at 857.] The same Note references "problems they are having with Justin" and "difficulties with other personnel." The context is Mahara's plan to communicate to Rudy and to Mona (a consultant who helped with the business) the limits Susan wanted to set on her involvement at the wine bar. [*Id.*]

In short, substantial evidence does not support a conclusion that Susan Mahara was working as the manager of Rudy's until June 2014. Instead, the evidence supports a conclusion that Susan, as a co-owner of the business, had a role in training and overseeing the work of the people the Maharas hired to manage the bar, and occasionally worked in the bar on an as-needed basis as her health permitted. Evidence that Mahara continued to "work at the shop for short periods of time," particularly given that she and her husband owned the business, is not inconsistent with Dr.

8

Ailinani's conclusions that when Mahara has a migraine she would be unable to perform even basic work activities. [DE 8 at 854, 1097.] "We have emphasized that 'working sporadically or performing household chores are not inconsistent with being unable to engage in substantial gainful activity.'" *Childress v. Colvin*, 845 F.3d 789, 792 (7th Cir. 2017), quoting *Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015). Failure to "recognize the difference between performing activities of daily living with flexibility (and often with help from family and friends) and performing to the standards required by an employer 'is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.'" *Childress*, 845 F.3d at 792-93, quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

The ALJ also cites Mahara's "frequent travels and other family and home activities." [DE 8 at 39.] First I would observe that if Mahara's travel and other activities were sufficiently frequent and time-consuming to be inconsistent with Dr. Ailinani's assessment of Mahara's capacities, then they are also inconsistent with the job of managing the bar that the ALJ nonetheless attributed to Mahara. Second, as with the extent of Mahara's work at Rudy's, the record does not support a conclusion that Mahara's travel and other activities contradict Dr. Ailinani's opinions. Occasional family vacations and accompanying her husband on business trips did not reflect an ability to be gainfully employed. Neither would Mahara's care for her grandson one day a week. The ALJ's reliance on these circumstances in Mahara's life is another example of

9

the failure to recognize the difference between performing some activities of daily living and being capable of performing to the standards of a reasonable employer, which the Court of Appeals has repeatedly criticized. *Childress*, 845 F.3d at 792-93.

Next, the ALJ's analysis of the medical record does not support her rejection of Dr. Ailinani's opinions. Although in the near-term after the implantation of the SCS on April 24, Mahara reported reduced migraine pain, by fall of 2014, her headaches were worsening again. Even within her analysis rejecting Dr. Ailinani's conclusions, the ALJ notes that "the claimant's reports in terms of numbers of headaches significantly increased in October 2014" and Mahara experienced "a recent increase in headaches and cervical-related pain." [*Id.* at 39.] Dr. Ailinani was aware that Mahara continued to experience significant pain over the months following the implantation of the SCS, as indicated in her office visits of June 5, July 1, September 3, and October 28. [*Id.* at 1053, 1048, 1042, 1036.] The medical record supports this with other health care providers as well. For example, at a follow-up visit with an internist on June 4, 2014, it was noted that since the placement of the spinal cord stimulator, Mahara "has had increased head pain." [*Id.* at 785.]

Finally, Dr. Ailinani's October 28, 2014 notation that Mahara experienced some benefit from medication is not inconsistent with her overall opinions. One can experience "some benefit" from medications while still being disabled by the residual pain. That is this case. Dr. Ailinani noted that Mahara suffered *17 migraines* in September

10

and *12 to 15 migraines* in October, and that Mahara rated her pain's severity, its interference with her enjoyment of life and its interference with her general activity a 7 out of 10 on a pain scale.  [*Id*. at 1043, 1047, 1048.]  Furthermore, between Mahara's October 28 visit to Dr. Ailinani and the doctor's Statement on December 2, Mahara had visited the emergency room twice for migraines, on October 31 and November 13.  [*Id*. at 1088, 1078.]  An ALJ cannot "cherry-pick evidence supporting his finding while ignoring contradictory information."  *O'Conner-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016).  Where an ALJ's rejection of a treating physician's opinion is based on the ALJ's "own, incorrect interpretation of the medical evidence...the ALJ's refusal to give controlling weight to the opinion is not supported by substantial evidence."  *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016).

These flaws in the reasons given by the ALJ for minimizing Dr. Ailinani's opinion are coupled with the ALJ's failure to discuss the required considerations: "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion."  *Larson*, 615 F.3d at 751.  *See also Brown*, 845 F.3d at 252.  Over the year prior to the ALJ's hearing, Dr. Ailinani had seen Mahara monthly or even more frequently.  The doctor's treatment specialty is in the area at the root of Mahara's claim of disability — debilitating pain from migraines.  Dr. Ailinani attempted a complex variety of things to provide Mahara relief from this crippling pain.  These include multiple

medications (what Mahara described as "different tools in the toolbox"), several types of injections and ablations, the implantation of the SCS, orthodontics and neck braces. As explained above, Dr. Ailinani's opinions about Mahara's capacity limitations are well supported by the medical record, and the ALJ's references to improved symptoms after the SCS and medications effective "for the most part" do not show otherwise. The ALJ's rejection of Ailinani's conclusions was not based on their inconsistency with other substantial evidence.

"The ALJ did not mention any 'regulatory factors' when evaluating [the treater's] opinion; the ALJ said only that the opinion merited 'little weight.' Looking at the factors, this conclusion is not supportable." *Meuser*, 838 F.3d at 912. The same can be said here, where the ALJ attributed Dr. Ailinani's opinions only "minimal weight." [DE 8 at 39.] Overall, the ALJ failed to appreciate the substantial evidence of the unpredictable nature of incapacitating migraine headaches, particularly with the frequency Mahara experiences them:

> Here, the ALJ appears to have concluded that incapacitating migraines once or twice a week would not be problematic because she would still have most of the week without such symptoms, but that essentially ignores the inability to schedule the incapacitating migraines... The ALJ erred in failing to account for the limitations caused by migraines occurring with that frequency.

*Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014). All this considered, I conclude that the ALJ failed to give "good reasons" for according Ailinani's opinion only minimal weight.

## Conclusion

An ALJ's failure to explain why she is discounting a treating physician's opinion is cause for remand. *Scott*, 647 F.3d at 740. An ALJ must build a logical bridge from the evidence to her conclusion. *Brown v. Colvin*, 845 F.3d at 251; *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). In the absence of a meaningful explanation of her reasons for discounting the treating physician's opinion, I can't affirm the decision. *See Scott*, 647 F.3d at 740. By her successful challenge to the ALJ's dismissal of the treating physician's opinions, Mahara demonstrates that the ALJ's findings and conclusions about the severity of her impairments and her residual functional capacity are not supported by substantial evidence. *Moore*, 743 F.3d at 1120-21.

ACCORDINGLY:

The final decision of the Commissioner of Social Security denying plaintiff Susan P. Mahara's application for Social Security Disability benefits is REVERSED AND REMANDED for further proceedings consistent with this opinion.

The Clerk shall enter judgment in favor of plaintiff and against defendant.

**SO ORDERED**.

ENTERED: February 17, 2017

    /s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**